IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MIDWEST FOUNDATION CORPORATION | § § § | |
| *vs.* | § § | C. A. NO. H – 14 – 1585 ADMIRALTY |
| M/T EAGLE BEAUMONT, *her tackle, apparel, furniture, equipment, etc., et al.* | § § § | |

### *ORIGINAL COMPLAINT*

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Midwest Foundation Corporation files this Original Complaint against Defendants, the M/T EAGLE BEAUMONT, *in rem*, and GSH2 Aframax Tanker I AS ("GSH2") and AET Shipmanagement Pte. Limited ("AET"), *in personam*, and for causes of action respectfully will prove by a preponderance of the credible evidence:

1. This action arises from a maritime tort committed upon the navigable waters of the United States. Accordingly, the Court has original jurisdiction of this admiralty and maritime claim under 28 U.S.C. §1333(1).

2. Venue is proper under 28 U.S.C. 1391(b)(2) because a substantial part of the property that is the subject of the claim is situated in this district.

3.      Plaintiff is a Delaware corporation with its principal place of business in Tremont, Illinois.

4.      On information and belief, the property that is the subject of this *in rem* action, the M/T EAGLE BEAUMONT, is an ocean–going tanker ship that: was built in 1996, is registered under law in Singapore, bears International Maritime Organization No. 9111644, weighs approximately 57,456 gross tons, and is engaged in the carriage of crude oil and similar product cargos to and/or from ports in the United States.  On the date of filing this Complaint, the M/T EAGLE BEAUMONT is or will be docked at Berth No. 6 of the ExxonMobil Refinery in Baytown, within the Southern District of Texas.

5.      On information and belief, at all times material, GSH2 owned, managed and/or operated the M/T EAGLE BEAUMONT as a common carrier of goods by water for hire between various ports, including berths in or near Baytown and Houston.  GSH2 is a foreign entity not authorized to do business in Texas but, on information and belief, at all times material, GSH2 did business in Texas by carrying cargo aboard vessels to and from Texas, operating and/or managing vessels in Texas navigational waters, entering into charter parties, bills of lading and/or other contracts of carriage in Texas, entering into charter parties, bills of lading and/or other contracts of carriage to be performed wholly or partly in Texas, and/or by committing a tort in Texas, each of which constitutes doing business in Texas in accordance with §17.042 of the Texas Civil Practice & Remedies Code.  On information and belief, GSH2 is a

non–resident as that term is used in Subchapter C of Chapter 17 of the Texas Civil Practice & Remedies Code but has not designated or maintained a resident agent in Texas.  Alternatively, although GSH2 may not be subject to the jurisdiction of the courts of general jurisdiction of Texas or any other state, this action arises under federal law and GSH2 has sufficient national minimum contacts with the United States as a whole.  The exercise of personal jurisdiction over GSH2 is consistent with the Constitutions and other laws of the United States and Texas.  Accordingly, serving GSH2 with a summons is effective to establish personal jurisdiction over it.  GSH2 can be served by and through the vessel's Master, Chief Mate, Second Officer, Third Officer and/or other deck officer on duty.  Alternatively, GSH2 can be served by serving the Texas Secretary of State.  Process or notice can be sent to GSH2 in care of AET Shipmanagement Pte. Limited, 11–02, Keppel Bay Tower, 1, Harbourfront Avenue, Singapore 098632.

6.     On information and belief, at all times material, AET managed and/or operated the M/T EAGLE BEAUMONT as a common carrier of goods by water for hire between various ports, including berths in or near Baytown and Houston.  AET is a foreign entity not authorized to do business in Texas but, on information and belief, at all times material, did business in Texas by carrying cargo aboard vessels to and from Texas, operating and/or managing vessels in Texas navigational waters, entering into charter parties, bills of lading and/or other contracts of carriage in Texas, entering into charter parties, bills of lading and/or other contracts of carriage to be performed

3

wholly or partly in Texas, and/or by committing a tort in Texas, each of which constitutes doing business in Texas in accordance with §17.042 of the Texas Civil Practice & Remedies Code.  On information and belief, AET is a non–resident as that term is used in Subchapter C of Chapter 17 of the Texas Civil Practice & Remedies Code but has not designated or maintained a resident agent in Texas.  Alternatively, although AET may not be subject to the jurisdiction of the courts of general jurisdiction of Texas or any other state, Plaintiff's action arises under federal law and AET has sufficient national minimum contacts with the United States as a whole. The exercise of personal jurisdiction over AET is consistent with the Constitutions and other laws of the United States and Texas. Accordingly, serving AET with a summons is effective to establish personal jurisdiction over it.  AET can be served at 11–02, Keppel Bay Tower, 1, Harbourfront Avenue, Singapore 098632.

7.   In 2012, Plaintiff entered into a contract with the State of Texas to remove and replace the four steel sheet marine dolphins located near the corresponding footings of the Martin Luther King (Gulfgate) Bridge that spans the Sabine–Neches Waterway in Port Arthur, Texas.

8.   Before beginning construction operations, Plaintiff's representative met with officers from the United States Coast Guard ("USCG") and Texas Department of Transportation to discuss and coordinate the construction plan, including handling and control of marine traffic on the Waterway.  Consequently, the USCG issued a Local Notice to Mariners in Coast Guard District 8, providing:

> Repairs have begun on the sheet pile dolphins that belong to the pier protection system of the Highway 82 Bridge (Martin Luther King or Gulf Gate Bridge) across the GIWW, Mile 286.9, WHL, at Port Arthur, Texas. The work is expected to be complete by March 2014. Work will begin on the SW dolphin. It will proceed to the NW, then to the NE and finally to the SE dolphin. There is no work scheduled in the navigable channel itself. If this changes, mariners will be notified by broadcast and the Local Notice to Mariners. ***Mariners are urged to exercise extreme caution when transiting the area.***

(Emphasis added.)  Plaintiff's work on the NW dolphin, located immediately northwest of the bridge, began in or about August 2013.

9.  On or about January 13, 2014 and while Plaintiff was conducting construction operations on the NW dolphin, the fully laden M/T EAGLE BEAUMONT passed inbound while travelling at an excessive rate of speed under the circumstances and posted Local Notice to Mariners. As she did so, the unusual swells and suction that she created in the Waterway proximately caused construction equipment, supplies, materials and components used by Plaintiff on or at the NW dolphin to be dislodged from their moored, installed or arranged positions, physically damaged and/or washed into the Waterway. That allision and resulting damages interrupted Plaintiff's construction operations at the NW dolphin for 29 days while Plaintiff necessarily inspected, evaluated, disassembled, repaired, replaced, reassembled, repurchased, calibrated and/or tested the equipment, supplies, materials

and components so that Plaintiff could resume construction operations as promptly as commercially reasonable.

10. The allision and Plaintiff's resulting damages proximately resulted from Defendants' respective acts and/or omissions including, but not limited to, its failure and/or refusal to take reasonable measures to:

(a) Take into consideration the effects reasonably to be anticipated from the M/T EAGLE BEAUMONT's speed and motion through the water.

(b) Manage and/or operate the M/T EAGLE BEAUMONT carefully and prudently so as to avoid creating unusual swells or suction that would damage the equipment, supplies, materials and dolphin components properly moored, installed or arranged positions on or at the NW dolphin.

(c) Take such precautions by way of reduction of speed or alteration of course as reasonably were necessary to prevent the allision and resulting damages.

Each of these acts and omissions by Defendants constitutes negligence.

11. Alternatively, the allision and Plaintiff's resulting damages proximately resulted from the M/T EAGLE BEAUMONT's unseaworthiness.

12. Alternatively, the allision and Plaintiff's resulting damages proximately resulted from Defendants' respective acts and/or omissions including, but not limited to, each of the following:

(a) Failing and/or refusing to maintain a proper look–out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision, in violation of 33 C.F.R. § 83.05.

(b) Failing and/or refusing to proceed at a safe speed so that the M/T EAGLE BEAUMONT could take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions, in violation of 33 C.F.R. § 83.06.

(c) Failing and/or refusing to proceed at a safe speed so that the M/T EAGLE BEAUMONT could take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions, in violation of 33 C.F.R. § 83.06.

(d) Failing and/or refusing to determine a safe speed by taking into account the following factors, in violation of 33 C.F.R. § 83.06:
  (1) The state of visibility;
  (2) The traffic density including concentration of fishing vessels or any other vessels;
  (3) The maneuverability of the vessel with special reference to stopping distance and turning ability in the prevailing conditions;
  (4) At night the presence of background light such as from shores lights or from back scatter of her own lights;
  (5) The state of wind, sea, and current, and the proximity of navigational hazards;
  (6) The draft in relation to the available depth of water.

    (e)    Failing and/or refusing to use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision existed, in violation of 33 C.F.R. § 83.07.

    (f)    Failing and/or refusing to take action to avoid collision that, if the circumstances of the case admitted, were positive, made in ample time and with due regard to the observance of good seamanship, in violation of 33 C.F.R. § 83.08(a).

    (g)    Failing and/or refusing to take action to avoid collision by slackening the vessel's speed or take all way off by stopping or reversing her means of propulsion, in violation of 33 C.F.R. § 83.08(e).

Each of these acts and/or omissions by Defendants constitutes negligence *per se* and/or negligence.

13.    Alternatively, at all times material and on information and belief, the allision and Plaintiff's resulting damages proximately resulted from AET's act(s) and/or omission(s) constituting negligence in managing and/or operating the M/T EAGLE BEAUMONT.

14.    Plaintiff cannot more specifically allege Defendants' respective acts and/or omissions constituting negligence. Plaintiff invokes and relies upon the doctrine of *res ipsa loquitur* because the character of the casualty was such that it would not have happened in the absence of negligence, and the instrumentality causing the occurrence exclusively was within Defendants' joint control.

15. Each of Defendants' alleged acts and/or omissions was a proximate cause of the allision, and of actual, incidental and consequential damages to Plaintiff. Those damages include, but are not limited to, reasonable and necessary costs and expenses for surveys, inspections, repairs and/or replacements, lost production, business interruption, loss of profits and other necessary costs and expenses. As best as presently can be determined, these damages equal or exceed the amount of $650,543.45.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Midwest Foundation Corporation prays that: process in due form of law according to the practices of this Honorable Court in causes of admiralty and maritime jurisdiction issue against the M/T EAGLE BEAUMONT, her engines, tackle, apparel, furniture, equipment, *etc.*; all persons claiming an interest therein be required to appear and answer under oath, all and singular, the matters aforesaid; it have judgment for its damages, interest, and costs; and,

This Honorable Court adjudge that Defendants, the M/T EAGLE BEAUMONT, *in rem*, and GSH2 Aframax Tanker I AS and AET Shipmanagement Pte. Limited, *in personam*, are liable to Plaintiff, jointly and severally, for its alleged damages, pre–judgment interest, post–judgment interest, court costs and all other relief as justice and equity allow.

          Respectfully submitted,

          *SHARPE & OLIVER, L.L.P.*

By /s/ Robert C. Oliver

          Robert C. Oliver
          State Bar No. 15255700
          S. D. Texas No. 886
          550 Westcott, Suite 230
          Houston, Texas 77007–5096
          Telephone:  (713) 864–2221
          Facsimile:  (713) 864–2228

OF COUNSEL:

R. M. Sharpe, Jr.
State Bar No. 18129000
S. D. Texas No. 889

          ATTORNEYS  FOR  PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MIDWEST FOUNDATION CORPORATION | § § § | |
| *vs*. | § § | C. A. NO. H – 14 – 1585 ADMIRALTY |
| M/V EAGLE BEAUMONT, *her tackle, apparel, furniture, equipment, etc., et al.* | § § § | |

### *VERIFICATION*

1.  My name is Robert C. Oliver.  I am the attorney of record for Plaintiff in this action, Midwest Foundation Corporation.

2.  I prepared and read the attached Original Complaint in this action.

3.  The contents of the Original Complaint are true and correct to the best of my information and belief.  The sources of information forming the basis for my information and belief as to all factual averments in the Original Complaint are: (a) Plaintiff's reports made to me, (b) my telephone inquiries of local marine bureaus, steamship agents and/or surveyors, (c) my review of today's website entries at Equasis.org, and (d) true and correct copies of original invoices, statements, and documents issued by the United States Coast Guard pertaining to the casualty at issue and provided to me by Plaintiff and/or its authorized representative.

4. The reason for this verification is that the M/V EAGLE BEAUMONT's registered owner, Defendant GSH2 Aframax Tanker I AS ("GSH2"), is a foreign entity and cannot be found in the Southern District of Texas.

5. To the best of my information and belief, none of GSH2's officers or directors is located within the Southern District of Texas.

6. To the best of my information and belief, GSH2's only known asset within the Southern District of Texas is the M/V EAGLE BEAUMONT, which is or likely will be today located at the ExxonMobil Refinery, Berth No. 6, in Baytown.

7. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I executed this Verification on June 6, 2014.

*[signature]*

Robert C. Oliver